IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ROMELIA V. MARRUFO,**

      **Plaintiff,**

vs.                                                                No. CIV 03-891 LCS

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Plaintiff's Motion to Reverse and Remand Agency Decision (Doc. 6), filed November 26, 2003. The Commissioner of Social Security issued a final decision denying Plaintiff's application for supplemental security income. This matter comes before this Court pursuant to 28 U.S.C. § 636(c). The United States Magistrate Judge, having considered the Motion, briefs, administrative record, and applicable law, finds that this Motion is not well-taken and should be **DENIED**.

**I.    STANDARD OF REVIEW**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *Hamilton v. Sec'y of Health and Human Svcs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such relevant evidence as a reasonable mind might accept to support the conclusion. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988). The decision of an Administrative Law Judge ("ALJ") is not supported by substantial evidence if the evidence supporting the decision is

overwhelmed by other evidence on the record. *Id.* at 805.

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of at least twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. § 423(d)(1)(A)). The Secretary has established a five-step process for evaluating a disability claim. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. *See Rayes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *See Gibson v. Bowen*, 838 F.2d 442, 448 (10th Cir. 1988).

## II. PROCEDURAL HISTORY

Plaintiff, now 42 years old, filed her application for supplemental security income on July 21, 2000, alleging disability commencing on July 2, 2000. (R. at 74.) Plaintiff's alleged disability was due to head injury, neck pain, lumbar disc disease and panic disorder. (R. at 69.) Plaintiff has a high school education (R. at 85) and has worked for short periods of time as a seasonal farm worker and as a sorter at the Woodward News. (R. at 80.)

2

Plaintiff's application for supplemental security income was denied at the initial level on December 19, 2000 (R. at 59-62) and at the reconsideration level on May 8, 2001. (R. at 65-68.) Plaintiff appealed the denial of her application by filing a Request for Hearing by Administrative Law Judge. (R. at 69.) Representative Jo Hicks was retained by Plaintiff on June 11, 2001. (R. at 27.) Plaintiff and husband Frank Marrufo testified at the hearing. (R. at 30.)

The ALJ issued her decision on February 26, 2003 (R. at 14-26), analyzing Plaintiff's claim in accordance with the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability in 2000. (R. at 15.) At the second step, the ALJ found that Plaintiff had an impairment or combination of impairments considered 'severe' based on the requirements of 20 C.F.R. § 404.1520(b). (Id.) The ALJ further found that Plaintiff's medically determinable impairments did not meet or equal any of the impairments found in the Listing of Impairments ("Listings"), Appendix I, Subpart P, 20 C.F.R. §§ 401.1501-1599. (R. at 15-17.) The ALJ also found that Plaintiff was not fully credible regarding the extent of her limitations. (R. at 19.) At step four, the ALJ found that Plaintiff had a Residual Functional Capacity ("RFC") for a limited range of light work. (R. at 17.) Additionally, the ALJ found that Plaintiff had no past relevant work. (R. at 19.) At step five, the ALJ found that Plaintiff was capable of adjusting to work existing in significant numbers in the national economy. (R. at 20.) Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time during the period under review. (R. at 21.)

Plaintiff filed a Request for Review of Hearing Decision by the Appeals Council and the Appeals Council denied this request for review on March 28, 2003. (R. at 5-6.) Hence, the

decision of the ALJ became the final decision of the Commissioner for purposes of judicial review. On July 30, 2003, Plaintiff filed this action, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

### III. ANALYSIS AND FINDINGS

Plaintiff has a history of head injury dating back to 1993 (R. at 246), as well as numerous complaints of back pain and knee pain. (R. at 247-248.) Plaintiff also has problems related to an anxiety disorder allegedly accompanied by panic attacks. (R. at 246.)

Plaintiff underwent an MRI of the lumbar spine in November of 1998, read by Dr. Cristie Lehr. (R. at 160-61.) Dr. Lehr's impression was of mild to moderate osteoarthritic and discogenic changes in the lumbar spine resulting in varying degrees of central canal stenosis. (R. at 160.) The findings were noted to be most prominent at the L4-L5 level. (Id.) Some loss of the normal lordotic curvature was observed. (R. at 161.) The findings were noted to be consistent with lumbar muscle spasm and very early and very mild degenerative changes. (Id.)

Plaintiff saw Dr. James Metcalf in December of 1998 for continued back pain. (R. at 131-133.) Plaintiff complained of pain in the lower back, aggravated by prolonged sitting, standing and walking and/or lifting. (R. at 131.) Plaintiff also described radicular pain down the right leg to the foot and stated that this pain was much more severe than the pain in her back. (R. at 132.) The right leg was noted to be weak and Plaintiff complained of episodes of discoordination. (Id.) She also complained of difficulty sleeping and of morning stiffness. (Id.) Dr. Metcalf's impression was of cumulative strain in the right trapezius muscle with a sprain of the lumbar spine and disk herniation at the L4-L5 level. (Id.) Dr. Metcalf noted evidence of radiculopathy in the right lower extremity and recommended that Plaintiff consult a neurosurgeon. (Id.)

Plaintiff presented at Woodward Hospital in February of 1999 for an outpatient physical therapy evaluation. (R. at 151-153.) This evaluation had been recommended by Dr. Emery Reynolds who opined that Plaintiff was temporarily totally disabled as a result of her on-the-job injury. (R. at 140.) At that time, Plaintiff reported pain in the right low back radiating into the right buttocks and into the right foot. (R. at 151.) Plaintiff also reported right shoulder pain and some numbness and tingling in the right forearm. (Id.) All positions were noted to increase Plaintiff's symptoms. (Id.) Significant knee pain following stair climbing was also reported. (Id.) Sleep was not noted to be interrupted by pain and Plaintiff indicated she took Ibuprofen and Bayer aspirin for pain. (Id.)

The clinical impression from this evaluation included lumbar disc disease with pain and sciatica significantly interfering with the activities of daily living. Also noted was osteoarthritis of the right knee which, it was found, could be interfering with Plaintiff's mobility. (R. at 152.) Testing of right sacroiliac dysfunction was negative. (Id.) Plaintiff's rehabilitation potential was felt to be good and she was started on a plan of physical therapy three times a week for four weeks to be followed by reevaluation of the need for further therapy. (R. at 153.)

Ms. Marrufo again presented to Dr. Reynolds in March of 1999 following a course of physical therapy. (R. at 136-37.) Plaintiff stated at that time that she did not believe physical therapy had been of any benefit. (R. at 136.) She complained of pain in the right hand, wrist, arm, shoulder, neck, upper back, knees and feet. (Id.) She further stated that her right leg caused the greatest amount of discomfort and indicated that the pain was constant. (Id.) Dr. Reynolds noted that the patient continued to show a normal neurological pattern with no other mechanical nerve root stress. (Id.) At that time, Dr. Reynolds felt a myelogram and post-myelogram CT

were indicated to check for evidence of any anatomic abnormality sufficient to explain Plaintiff's complaints of pain. (Id.)

Plaintiff received treatment at the Collins Chiropractic Clinic from April of 1999 until approximately May of 2000. (R. at 175-196.) Plaintiff continued to complain of right shoulder pain and low back pain radiating into the right hip and leg. (R. at 195.) In April of 1999, an evaluation at Collins Chiropractic indicated that Ms. Marrufo was totally and temporarily disabled from her usual employment as she was unable to sit or stand for long periods of time. (R. at 196.) As of April of 2000 however, Plaintiff reported that the pain in her neck and trapezius was improving. (R. at 181.) Plaintiff's right leg pain was also noted to be improving. (R. at 180.)

Ms. Marrufo was seen by Dr. John Munneke in October of 1999 for evaluation of chronic back and shoulder pain. (R. at 163-65.) She also complained of radiation of back pain into her right hip and leg (R. at 163) and stated she experienced numbness and tingling in her arms and hands. (R. at 164.) Dr. Munneke opined that Plaintiff had sustained a strain to the lumbar spine which aggravated preexisting degenerative disease of the lumbar spine. (Id.) Dr. Munneke believed Plaintiff was at maximum medical improvement and stated that Plaintiff could return to the work force. (Id.) Plaintiff was noted to have a 5% residual disability to the body as a whole as a result of the work-related injury. (Id.)

Plaintiff also began receiving treatment in 2000 for a number of psychological difficulties. An evaluation by Dr. Raiman Johnson in November of 2000 suggested that Plaintiff was experiencing a number of psychological complaints. (R. at 213-217.) Dr. Johnson opined that Plaintiff had marginal socialization skills, was not psychologically sophisticated and seemed to be

6

developmentally delayed. (R. at 214.) Plaintiff stated at this time that she was taking Zoloft[1] and that this seemed to be helping her anxiety somewhat, but that in the past she had experienced severe panic attacks. (Id.) Dr. Johnson's impression was of adjustment disorder with depressed mood and borderline intellectual functioning with a GAF of 55[2].

A Functional Capacity Assessment, completed in May of 2003, suggested that Ms. Marrufo was able to engage in some type of gainful activity. (R. at 223.) Dr. J. LeRoy Gabaldon opined that Ms. Marrufo's allegations of being unable to work were inconsistent with the available evidence. (Id.) While Ms. Marrufo was thought to be of borderline intelligence, Dr. Gabaldon noted no evidence of an ongoing thought disorder. (Id.) Plaintiff's daily activities were noted to be intact and Plaintiff was found to have the ability to be social. Ms. Marrufo was noted to have the capacity to attend, concentrate and adapt, with limited capacity to understand and remember. (Id.)

Ms. Marrufo's Physical Residual Functional Capacity Assessment, completed in December of 2000, revealed that she did have the capacity to perform some types of light work. (R. at 245.) It was found that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds. (R. at 239.) Plaintiff was found to be able to stand and/or walk for about 6 hours in an 8-hour workday and sit for a total of about 6 hours in an 8-hour workday. (Id.) Plaintiff was found to be limited

---

[1]Zoloft is indicated for the treatment of depression, obsessive-compulsive disorder, and panic disorder. It is not known to cause sedation or to interfere with psychomotor performance. *Physician's Desk Reference*, 2400-2401, (54th ed. 2000).

[2]Global Assessment of Functioning (GAF) is used for reporting the clinician's judgment of the individual's overall level of functioning. The GAF scale may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure. A GAF score of 55 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Diagnostic and Statistical Manual of Mental Disorders*, 34, (4th ed. 2000) [DSM-IV].

in manipulative limitations only to occasional overhead reaching. (R. at 241.) She was not found to have visual, communicative or environmental limitations. (R. at 241-42.)

Plaintiff presented to Dr. Audrey Vega in December of 2001 for further evaluation of her physical and mental problems. (R. at 286.) Plaintiff was noted to be taking Wellbutrin[3], Naproxen[4] and Hydrochlorothiazide[5] at that time. (R. at 295.) Dr. Vega opined that Ms. Marrufo was, "at best, temporarily disabled" due to her chronic neck and back pain. (Id.) She was thought to be able to work in a sedentary job on a part-time basis only. (Id.) She was also thought to have major depression with debilitating anxiety. (Id.) Dr. Vega noted that Plaintiff had slow mentation and poor problem solving abilities and would most likely be unable to work without supervision. (Id.)

Plaintiff saw Dr. R. E. Pennington in February of 2001. (R. at 318.) At that time, Dr. Pennington described excellent flexion of the lumbar spine, with no pain on extension, no palpable muscle guarding in the lumbar spine or right shoulder, although a tender spot in the right shoulder was noted. Dr. Pennington's impression was of cervical lumbar strain. (R. at 319.) In March of 2001, Dr. Pennington again saw the patient and described the presence of degenerative disc disease of the spine and degenerative joint disease of the right knee as well as muscle spasms in the right trapezius muscle. (R. at 316.) Plaintiff was offered anti-inflammatory medications, but preferred not to take them at that time. Physical therapy was scheduled and an exercise and diet

---

[3]Wellbutrin is indicated for the treatment of depression. Adverse reactions may include agitation, dry mouth, insomnia, headache, nausea and tremor. *PDR* at 1301-1302.

[4]Naproxen is indicated for the treatment of rheumatoid arthritis, osteoarthritis, ankylosing spondylitis and juvenile arthritis. *PDR* at 2632.

[5]Hydrochlorothiazide is indicated for the treatment of hypertension. Side effects may include headache, sinus abnormality, cough, rhinitis, rash, anxiety/nervousness, and muscle cramp. *PDR* at 816-817.

8

program was recommended. (R. at 317.)

In April of 2001, Plaintiff complained to Dr. Pennington of pain radiating into the leg when standing or walking. (R. at 314.) Plaintiff also complained of low back pain on the right with prolonged sitting. (Id.) An EMG/ nerve conduction study was planned to rule out radiculopathy. (R. at 315.) Additionally, Plaintiff received an injection in the L5-S1 region for pain. (Id.)

An electrodiagnostic evaluation was performed by Dr. Karen Balkman in October of 2001. (R. at 304.) Dr. Pennington found this examination to be consistent with a chronic L5 radiculitis on the right with a deenervation-reenervation process. The clinical correlation was suggestive of lumbar facet arthrosis. (Id.) Plaintiff again saw Dr. Pennington in November of 2001. At that time he offered a diagnosis of degenerative disc disease with annular tear at multiple levels of positive concordance at the L4-5 level. (R. at 303.) Dr. Pennington's plans included recommendations of weight loss, minimization of smoking and annuloplasty for pain control, as well as stabilization of the annulus in order to prevent a surgical procedure. (Id.)

Dr. Carmed Rodriguez evaluated Plaintiff's mental impairments in May of 2002. (R. at 328.) Plaintiff was noted to have a current GAF of 49[6] with the highest GAF in the past year being 55. (R. at 323.) Plaintiff complained of mood disturbance, oddities of thought and perception, social withdrawal, decreased energy, persistent irrational fears, recurrent panic attacks and generalized persistent anxiety. (R. at 324.) Dr. Rodriguez noted that Ms. Marrufo was not taking her medications as prescribed and that her panic attacks were well-controlled when

---

[6]A GAF of 49 is consistent with serious symptoms (e.g., suicidal ideation, sever obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DSM-IV at 34.

9

medications were taken properly. (Id.) Plaintiff was not found to have a low I.Q. or reduced intellectual functioning. (R. at 326.) She was noted to have moderate difficulties in maintaining social functioning but to seldom have deficiencies of concentration resulting in failure to timely complete tasks. (R. at 327.) Dr. Rodriguez noted that Plaintiff might have difficulty working at a regular job on a sustained basis. (Id.)

A post-discogram CT scan of the lumbar spine performed in October of 2001 revealed diffuse severe degenerative disc changes and probable annular ligament disruption at L3-4, L4-5 and L5-S1. (R. at 288.)

**IV. DISCUSSION**

In her Motion to Reverse or Remand Agency Decision (Doc. 6), Plaintiff raises a number of issues in arguing that the ALJ's decision was erroneous. Plaintiff contends that the ALJ erred by ignoring the opinions of her treating physicians and that the ALJ erred in examining her credibility and residual functional capacity. Plaintiff also claims that the ALJ erred in evaluating the Vocational Expert's opinion and that she erred in failing to address Plaintiff's mental condition.

Plaintiff first contends that the ALJ failed to account for the opinions of her treating physicians and that she failed to adequately credit Plaintiff's subjective complaints of pain. Plaintiff is correct to point out that the ALJ must give controlling weight to the treating physician's opinion, provided that opinion is well-supported and is not inconsistent with other substantial evidence. *White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2001). 20 C.F.R. § 404.1527(d)(2). Factors to be considered in evaluating a treating physician's opinions include the opinion's consistency with other evidence, the length of the treatment relationship, the frequency

of examination and the extent to which the opinion is supported by objective medical evidence. *Id*.

Plaintiff argues that the ALJ failed to consider her physician's opinions with regard to both her physical and mental impairments. She goes on to argue that the ALJ has ignored all clinical findings in this case. It is well established that the ALJ must consider all the evidence and that the ALJ must discuss the uncontroverted evidence he chooses not to rely upon as well as significantly probative evidence he rejects. *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).

It is clear from the ALJ's opinion that she considered a number of medical records regarding Plaintiff's mental difficulties, including the records of Dr. Audrey Vega. (R. at 15-16.) In accordance with *Clifton*, the ALJ did discuss her reasons for not crediting Dr. Vega's opinions, namely that her opinions were contradictory and that they did not appear to be based on objective findings. (R. at 16.) Because the ALJ determined that Dr. Vega's conclusions were contradictory and not supported by objective findings, she was well within her discretion to discredit those conclusions. *White*, 287 F.3d at 907. As such, the decision of the Commissioner on this issue should be upheld.

Plaintiff next contends that the ALJ erred in finding that her complaints were not fully credible. The ALJ determined that Plaintiff's subjective complaints were exaggerated in light of the record as a whole. (R. at 19.) It is well-established that subjective testimony alone that the claimant has symptoms cannot establish a finding of disability. *Gatson v. Bowen*, 838 F.2d 442, 447 (10th Cir. 1988). Objective medical evidence must establish an impairment and statements regarding the intensity and persistence of symptoms must be consistent with the medical findings and signs. *Id.*

When determining the credibility of pain testimony, the ALJ should consider factors such as the levels of medication and their effectiveness, the extensiveness of attempts to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility, the motivation of and relationship between the Plaintiff and other witnesses, and the consistency or compatibility of non-medical testimony with the objective medical record. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

The Tenth Circuit generally treats credibility determinations made by an ALJ as binding upon review. *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983). The Court has previously stated that credibility determinations are particularly the province of the finder of fact and the Court has declined to upset such determinations when supported by substantial evidence. *Diaz v. Sec'y of Health and Human Svcs.*, 898 F.2d 774, 777 (10th Cir. 1990). In the present case, the ALJ's determinations with respect to Plaintiff's credibility were supported by substantial evidence. As such, the decision of the Commissioner should be upheld with respect to the ALJ's credibility determination.

Plaintiff also argues that the ALJ erred in evaluating her Residual Functional Capacity. She contends that the ALJ wrongly gave greater weight to the Functional Capacity Assessments performed by medical consultants than to the opinions of her treating physicians. A claimant's RFC is determined by what that individual can do despite his limitations, and it is based upon all the relevant evidence including medical records, observations of treating physicians and others, as well as on a claimant's own descriptions of his limitations. 20 C.F.R. §§ 416.945(a)-416.946.

An examination of the ALJ's opinion reveals that the records of treating and consulting physicians as well as Plaintiff's own descriptions of her complaints were carefully reviewed. (R.

12

at 17-19.)  Although the ALJ did reject Dr. Vega's conclusion that Plaintiff could only perform part-time work, an ALJ may disregard the opinions of a treating physician if she sets forth specific, legitimate reasons why she chooses not to rely on those opinions.  *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996).  In the present case, the ALJ did set forth specific reasons for discounting Dr. Vega's opinion and it is apparent that her RFC determination was supported by substantial evidence.  As such, Plaintiff's contention that the ALJ erred in evaluating her RFC must be rejected.

Plaintiff's fourth allegation of error is that the ALJ incorrectly evaluated the VE's response to the proffered interrogatories.  Specifically, Plaintiff points to the VE's response to Interrogatory #12, in which the VE stated that the limitations listed in #12 would eliminate virtually all work.  (R. at 126.)  Plaintiff's argument is without merit.  Question #12 describes an individual with panic attacks, chronic pain, and depression, who would be unable to work three to four days per month.  (Id.)  Question #12 sets forth limitations which the ALJ found did not apply to the Plaintiff.  A vocational expert's testimony is not binding on an ALJ if it incorporates limitations that the ALJ finds do not apply to the Claimant.  *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1999).  As such, the ALJ was correct not to incorporate the VE's response to Question #12 into her decision and Plaintiff's argument on this point must be rejected.

Finally, Plaintiff argues that the ALJ erred in failing to address her mental condition and specifically, several of the GAF scores assigned to Plaintiff by her therapist.  Plaintiff was, at one point, given a GAF score of 49 by her therapist.  However, this fact alone does not mean that the ALJ did not consider Plaintiff's mental impairments.  An examination of the ALJ's opinion reveals that the ALJ devoted substantial time to a discussion of Plaintiff's mental impairments.  (R. at 14-

13

22.) The ALJ discussed records from Plaintiff's mental healthcare providers, including GAF scores, at step three of the sequential evaluation, at which time she determined that Plaintiff's mental impairments did not meet one of the Listings, (R. at 16-17) and again at step four in determining Plaintiff's RFC. (R. at 19.) The ALJ set forth substantial evidence which supports her decision as to Plaintiff's mental impairments. In reviewing the ALJ's decision, this Court may neither reweigh the evidence nor substitute its discretion for that of the Commissioner. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). As such, Plaintiff's arguments that the Commissioner did not properly consider her mental impairments must be rejected.

## V. CONCLUSION

Upon review of the evidence presented in this Motion to Reverse and Remand for Rehearing, this Court has determined that the Commissioner's decision was supported by substantial evidence and that the ALJ adequately developed the record. Accordingly, Plaintiff's Motion to Reverse and Remand for Rehearing is **DENIED**.

**A JUDGMENT CONSISTENT WITH THIS OPINION SHALL ISSUE**.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**